SEAN K. KENNEDY (No. 1456328)
Federal Public Defender
Email: Sean_Kennedy@fd.org
CARLTON F. GUNN (No. 112344)
Deputy Federal Public Defender
Email: Carlton_Gunn@fd.org
Office of the Federal Public Defender
321 E. 2nd Street
Los Angeles, California 90012-4758
Telephone (213) 894-1700

Attorneys for Defendant
SAAK AVAKYANTS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 10-299-MMM |
| Plaintiff, | |
| v. | **NOTICE OF MOTION; MOTION TO SUPPRESS STATEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION** |
| SAAK AVAKYANTS, | |
| Defendant. | Hearing Date:  August 23, 2010<br>Hearing Time:  1:15 p.m. |

TO: UNITED STATES ATTORNEY ANDRE BIROTTE, AND ASSISTANT
UNITED STATES ATTORNEY JAY ROBINSON:

PLEASE TAKE NOTICE that on August 23, 2010, at 1:15 p.m., or as soon
thereafter as counsel may be heard, in the courtroom of the Honorable Margaret M.
Morrow, United States District Judge, defendant Saak Avakyants will bring on for
hearing the following motion:

///
///
///
///

## MOTION

Defendant Saak Avakyants, through his counsel of record, Deputy Federal Public Defender Carlton F. Gunn, hereby moves this Court for an order suppressing all statements made during an interrogation at the time of his arrest on March 11, 2010, on the ground that such statements were obtained in violation of the Fifth Amendment to the United States Constitution.  This motion is based on the attached memorandum of points and authorities and declaration, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: July 16 , 2010

By _____
CARLTON F. GUNN
Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Saak Avakyants is charged in a multi-count indictment with access device fraud, in violation of 18 U.S.C. § 1029, and unlawful transportation of hazardous material, in violation of 49 U.S.C. § 5124. Trial is presently set to commence on September 7, 2010, with a status conference scheduled for August 23, 2010.

## II.

## STATEMENT OF FACTS[1]

On March 11, 2010, United States Secret Service agents served a federal arrest warrant for Mr. Avakyants at his home in North Hollywood, California.  The agents entered Mr. Avakyants's home early in the morning; by Mr. Avakyants's recollection, it was 5:30 a.m. or 6:00 a.m.  Whatever time it was, Mr. Avakyants was still in his underwear.

After entering and securing the house, the agents questioned Mr. Avakyants. Mr. Avakyants is of Armenian ancestry and a citizen of Russia, so the native languages that he speaks well are Armenian and Russian.  He moved to the United States approximately seven or eight years ago and has learned some English, but does not speak or understand it very well.  Still, because he lives in the United States and would like to stay here, he tries using English whenever he can.

An agent who spoke Russian was present at least part of the time, but the

---

[1] This statement of facts is based on the attached declaration by Mr. Avakyants.

3

1  questioning was mainly in English -- by Mr. Avakyants's estimate, 90% of the time.

2  Most important, the *Miranda* rights were read to Mr. Avakyants in English rather

3  than in Armenian or Russian.  Mr. Avakyants thought he understood most of what the

4  agents told him.  He did understand, *inter alia*, that he did not have to talk to the

5  agents if he did not want to and that he could call a lawyer if he wanted to.  But he

6  did not understand that he could have an attorney at government expense if he did not

7  have the money to hire one.

8

9      After the reading of rights, Mr. Avakyants did answer questions.  He actually

10  thought it was better not to talk to the agents, but he talked to them anyway.  He was

11  scared at the time, and he signed a form – presumably the *Miranda* rights form –

12  because he was scared.  Another reason he talked to the agents was that they told him

13  it would be much better for him to talk to them because they could then tell the judge

14  that he had cooperated and that would be better for him.  The statements Mr.

15  Avakyants made in response to the agents' questioning are reflected in the report of

16  interview attached as Exhibit A.

17

18                                III.

19                            ARGUMENT

20

21      In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court

22  ruled that police may not question a person who is under arrest until they have

23  advised him that he has certain constitutional rights.  In particular, an officer

24  conducting an interrogation of a person in custody must advise the person that (1) he

25  has the right to remain silent and anything he does say will be used against him in

26  court; (2) he has the right to consult with a lawyer and have the lawyer with him

27  during the interrogation; and (3) if he cannot afford a lawyer, one will be appointed

28  to represent him.  *Id.* at 467-73.  The government bears a "heavy burden" of showing

that a suspect who makes a statement while in custody was informed of and intelligently and voluntarily waived these rights. *Id.* at 475; *see e.g., Tague v. Louisiana*, 444 U.S. 469 (1980) (per curiam).

What an intelligent and voluntary waiver means was further discussed by the Supreme Court in *Moran v. Burbine*, 475 U.S. 412 (1985). The Court there stated:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

The burden is also on the government to demonstrate that any statements made by a suspect are voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). It is one of the most basic premises of our criminal justice system that an involuntary confession may not be admitted at trial. *See, e.g., Culombe v. Connecticut*, 367 U.S. 568 (1961); *Brown v. Mississippi*, 297 U.S. 278 (1936).

Language difficulty is one factor that may impair the ability of a person to waive his *Miranda* rights intelligently and voluntarily. *See, e.g., United States v. Garibay*, 143 F.3d 534, 537 (9th Cir. 1998) (citing *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1985)). And here that factor weighs heavily against the government. The native languages that Mr. Avakyants speaks

1  well are Armenian and Russian.  While he tries to speak and understand English, he

2  does not speak and understand it well, and his difficulty in understanding English

3  was no doubt aggravated by the fact that he was arrested early in the morning in his

4  own home and in his underwear.  In addition, he was understandably scared; indeed,

5  he states in his declaration that this is one of the reasons he signed what was

6  presumably the *Miranda* waiver form and agreed to talk to the agents.  Finally, Mr.

7  Avakyants specifically states in his declaration that while he understood that he had

8  the right not to talk to the agents and the right to call an attorney if he wanted to, he

9  did not understand one of the other rights a suspect must understand in order to give

10  the intelligent and voluntary waiver that *Miranda* requires – the right to have counsel

11  provided free of charge if the suspect cannot afford one.

12

13     All of these circumstances, taken together, make it extremely doubtful that Mr.

14  Avakyants intelligently and voluntarily waived his *Miranda* rights and then made a

15  voluntary statement.  Unless the government can prove he did, his confession is

16  inadmissible.

17

18

19

20

21

22              *       *       *

23

24

25

26

27

28

6

IV.

CONCLUSION

For the foregoing reasons, Mr. Avakyants respectfully requests that the Court order his statements suppressed.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: July 16, 2010

By _____
CARLTON F. GUNN
Deputy Federal Public Defender

7

# DECLARATION OF SAAK AVAKYANTS

I, Saak Avakyants, hereby declare and state:

1.      I am a defendant in the case of *United States v. Saak Avakyants, et al.*, CR 10-299-MMM.

2.      I am of Armenian ancestry and a citizen of Russia.  My native languages that I speak well are Russian and Armenian.  I moved to the United States approximately seven or eight years ago and have learned some English, but I do not speak it very well.  Still, because I live in this country, I try to use English whenever I can.

3.      I was arrested on March 11, 2010, at my house in North Hollywood.  I think it was about 5:30 a.m. or 6:00 a.m. when the agents entered my house.  I know I was in my underwear at the time.

4.      After the agents arrested me, they asked me questions.  They did have an agent who spoke Russian there part of the time, but I would estimate the questioning was in English 90% of the time.  About half the time we were in the main room of the house and about half the time we were in my bedroom.

5.      The agents did read me some rights before they asked me questions.  This was in English.  Though my English is not that good, I thought at the time that I understood most of what they said to me.

6.      The rights the agents read me did tell me that I did not have to talk to them.  The agents also told me I could call a lawyer if I wanted to.  But I did not

8

1    understand that I could have an attorney for free if I did not have the money to hire

2    one.

3

4         7.    I thought it was better for me not to talk to the agents, but I talked to

5    them anyway.  I was scared at the time, and I signed a form they gave me because I

6    was scared.  Also, the agents told me that it would be much better for me if I talked to

7    them because they could then tell the judge that I was cooperating and that that would

8    be better for me.

9

10        8.    I have signed this declaration after having had it read to me in a

11   combination of Russian and Armenian.

12

13        I declare under penalty of perjury that the foregoing is true and correct to the

14   best of my knowledge.

15

16   DATED: July _15_, 2010                          _____

17                                                   SAAK AVAKYANTS

18

19        I declare under penalty of perjury that I read the foregoing declaration to Saak

20   Avakyants in a combination of the Russian and Armenian languages.

21

22   DATED: July _15_, 2010                          _____

23                                                   INTERPRETER

24

25

26

27

28